In the matter of the appeal from the decree of the orphans court for Essex county admitting to probate a certain paper-writing as the last will and testament of William Book, deceased.

[Decided October 25th, 1918.]

An adopted child is not issue within the purview of section 29 of an act concerning wills (*4 Comp. Stat. p. 5865*), and the will of a testator who, at the time of making, had no issue, although he had an adopted child and who subsequently died with his wife *enceinte* of a child, which was thereafter born, is void.

On appeal from the Essex orphans court.

*Mr. Thomas S. Henry* and *Mr. Francis Child*, for the appellant.

*Mr. John E. Helm* and *Mr. Harry Campton*, for the respondent.

LANE, VICE-ORDINARY.

The testator adopted a child in accordance with the provisions of an act concerning minors, their adoption, custody and maintenance. *Rev. of 1902, 2 Comp. Stat. p. 2807*, amended *P. L. 1912 p. 53*. His wife at the time of the adoption died. By her he had no children. He remarried. He then made his will. He died, and after his death a posthumous child of the second marriage was born. The will was admitted to probate by the orphans court. It provides substantially that two-thirds of his estate should go to his wife and that one-third should be held in trust for the benefit of (and ultimately to go to) the adopted child under certain conditions.

A caveat was filed against probate by William Feindt, the natural father of the adopted child. Although not so stated in terms it is apparent that the caveat was filed on behalf of the adopted child. Subsequently, an order was made appointing the natural father next friend of the adopted child.

The contention of the respondent that the appellant had no standing in the court below is untenable, I think, for the reasons stated below.

The insistence of the appellant is that under section 20 of an act concerning wills (*4 Comp. Stat. p. 5865*) the will is void, having been made at a time when the testator had no issue living, the testator dying with his wife *enceinte* of a child, which was thereafter born.

The single question presented for determination is whether the testator having an adopted child at the time of the making of the will had issue within the purview of section 20. Sections 20 and 21 of the Wills act read as follows (page 5865). Section 20:

"That every last will and testament made when the testator had no issue living, wherein any issue he might have is not provided for or mentioned, if at the time of his death he leave a child, children or issue, or leave his wife *enceinte* of a child or children which shall be born, such will shall be void and such testator be deemed to die intestate."

Section 21:

"That if a testator having a child or children born at the time of making and publishing his last will and testament, shall at his death leave a child or children born after the making and publishing of his said last will and testament, or any descendant or descendants of such after-born child or children, the child or children so after-born, or their descendant or descendants, respectively, if neither provided for by settlement nor disinherited by the said testator, shall succeed to the same portion of the father's estate, as such child or children or descendants as aforesaid would have been entitled to, if the father had died intestate; towards raising such portion or portions, the devisees and legatees, or their representatives, shall contribute proportionably out of the part devised and bequeathed to them by the same will and testament."

At the time these sections were originally enacted there was no statute of this state providing for adoption. The legislature, therefore, could not have had adopted children in contemplation. It is clear that the words "issue," "child" or "children," in sections 20 and 21, are used in their strict and natural sense, and that the words "child" or "children" refer to a child or children born to the testator. The word "issue" may include descendants of every degree. In *Wright* v. *Gaskill, 74 N. J. Eq. 742,* the

present chancellor, then vice-chancellor, held that the word "issue" in a devise is equivalent to heirs of the body. The court of errors and appeals, in *Weehawken Ferry Co.* v. *Sisson,* *17 N. J. Eq. 475* (at *p. 486*), said that the word "issue," when not restrained by the context, is coextensive and synonymous with descendants, comprehending objects of every degree. Considering the context, it is clear, I think, that the legislative intent was that a will should be considered void if it appear that it was made at a time when the testator had no descendants (by blood) living and that after the making thereof there had been a child or children born to the testator and that at the time of death or at the conclusion of the period of gestation such child or children or his or their descendants are living.

The respondent insists that the effect of the Adoption act is to make an adopted child issue for all purposes not expressly excepted by the terms of the act. The conclusion that .I have reached renders it unnecessary for me to pass upon the question raised by the appellant as to whether, if the Adoption act can be so construed, it is to such extent unconstitutional upon the ground that its purpose is not expressed in its title upon the reasoning of the case in which the act abolishing dower and curtesy has been held unconstitutional. The respondent would have the statute (sections 20 and 21 of the Wills act) read as follows. Section 20 :

"That every last will and testament made when the testator had no issue (or adopted child) living, wherein any issue (or adopted child) he might have is not provided for or mentioned, if at the time of his death he leave a child, children (natural or adopted) or issue, or leave his wife *enceinte* of a child or children which shall be born, such will shall be void and such testator be deemed to die intestate."

Section 21 :

"That if a testator having a child or children born (or adopted) at the time of making and publishing his last will and testament, shall at his death leave a child or children (or adopted) after the making and publishing of his said last will and testament, or any descendant or descendants of such after-born (or adopted) child or children, the child or children so after-born (or adopted)," &c.

Turning to the Adoption act we find that the effect of adoption is as follows (*P. L. 1912 p. 53*) :

"And the adopting parent or parents of the child shall be invested with every legal right in respect to obedience and maintenance on the part of the child as if said child had been born to them in lawful wedlock; and the child shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock; provided, said child shall not be capable of taking property expressly limited to the heirs of the body of the adopting parent or parents, nor property coming from the collateral kindred of such adopting parent or parents by right of representation; and provided also, on the death of the adopting parent or parents and the subsequent death of the child so adopted, without issue, the property of such deceased parent or parents shall descend to and be distributed among the next of kin of said parent or parents and not to the next of kin of the adopted child; and provided also, if such adopting parent or parents shall have other child or children, then and in that case the children by birth and by adoption shall, respectively, inherit from and through each other as if all had been children of the same parents born in lawful wedlock."

Adoption was unknown at the common law, and it has been universally held, in common law states, that the provisions of statutes providing for it, being in derogation of the common law, must be strictly construed.

The legislature intended to permit the creation of an artificial status which would have so many of the incidents of the natural status of parent and child as indicated by the act, but it does not follow from this that it was the legislative intent, because it attached to the artificial status most of the attributes which attach to the natural status, to create a status which, aside from the exceptions specifically provided for by the act, should be in all respects equal to the natural status. In other words, it does not follow that the legislature intended that in all cases, except those expressly excepted by the act, the adopted child should be considered as issue, or as a child, where the term "child" is used as synonymous with a child born of the parent.

The case is novel in this state, and when resort is had to other jurisdictions, it is found that the cases are in conflict, especially if head-notes alone are considered. A critical examination of the opinions will disclose that they are not in such hopeless con-

flict as otherwise would seem. *1 Rul. Cas. L. tit. "Adoption"* §§ *30, 33; 46 L. R. A. 171; 17 L. R. A. 435; 7 L. R. A. 485; 30 L. R. A. (N. S.) 914; 44 L. R. A. (N. S.) 296; 8 L. R. A. (N. S.) 117.*

But slight assistance, however, can be obtained from an extended consideration of these cases. Many of them have been determined upon statutes differing in some respects from those here in force. Others rest upon local law not applicable in this state, and in others it will be found that the statutes under consideration were adopted contemporaneously, whereas in this state they were not. Before the court can find that an adopted child is within the purview of section 20 of the Wills act, I think it must be made clear to appear that there can be no logical argument that there should be a distinction, as to the revocation of a will, between those cases in which the testator may have issue of his body at the time he makes the will and those cases in which he may have an adopted child, and also between those cases in which he may have issue born of the body after he has made his will, and those cases in which he may have adopted a child. I am of the opinion that this does not clearly appear. The reason that the legislature has provided that a will should be revoked if made when there is no issue living and afterwards there be issue born, &c., is that it was contemplated that the testator, if he had realized the situation would, in all probability, have made other disposition of his entire estate and the reason why, in case the will be made when there is issue living and thereafter children be born, that the after-born children or their descendants are let in to share in the estate as if the testator had died intestate and the legacies, &c., abate sufficiently to make up the shares, must be that the testator having issue living at the time he made his will, in making it and providing for others, must be assumed to have considered the claim and demand of the issue. I do not think it necessarily follows that the effect of adopting a child is the same upon the mind as having issue born.

In *Davis* v. *Fogle (Supreme Court of Indiana, 1890), 124 Ind. 41; 23 N. E. Rep. 861; 7 L. R. A. 485,* the court held, under a statute which provided that a will should be deemed

revoked if the testator should have born to him legitimate issue who should survive him, or should have posthumous issue, that the will was not revoked by the adoption of a child, though by the adoption statute the child was entitled to receive all the rights and interests in the estate of the adopting parent by descent or otherwise that such child would if the natural heir of such parent. The court said: "To hold that the adoption of a child revokes the will, it is necessary to interpolate into section 2560, after the words 'legitimate issue,' the words 'or shall adopt a child,' or words to the same effect. * * * It would be legislation and enacting a statute to so construe it, and would be putting an unwarranted construction upon the statute to hold that the words 'the testator shall have born to him legitimate issue' mean the same as or include an adopted child, or that by the adoption of a child a parent has born to him or has legitimate issue. The one is made a legal heir by legal proceedings under the statute, and the other is an heir by reason of being born in lawful wedlock; for one the parent has natural love and affection; for the other the parent may or may not have. The one the parent is bound to by nature and under moral obligation to support, maintain, educate and provide for, and to the other the parent is under such obligations as the statute imposes, and none other. The statute gives to the one certain rights and imposes certain obligations on the adopting parents, but it does not make it the legitimate child and issue of the adopting parents or a child born to them."

Although there is no case in this state in which the precise question now before the court has been determined, there are two cases from our court of last resort that seem to me, particularly when considered in conjunction with the cases from foreign jurisdictions, to point irresistibly to the manner in which it must be decided.

In *Heidecamp* v. *Jersey City, &c., Ry. Co., 69 N. J. Law 284*, the court of errors and appeals held that under the Death act the next of kin of a deceased was the next of kin by blood and not by the adopting parents. The court, considering the effect of the Adoption act upon the Death act, said: "The statute expressly invests the adopting parent with every legal

right in respect to obedience and maintenance on the part of the child as if the child had been born to them in lawful wedlock, but it wholly fails to bestow upon the adopting parent any right to inherit the estate of the adopted child."

In *Stout* v. *Cook*, 77 *N. J. Eq. 153*, Vice-Chancellor Howell held that an adopted child was not within the term "child or children," as used in a will made by the father of the adoptive parent prior to the enactment of the Adoption act. The vice-chancellor said: "The will speaks only of 'child or children,' which could mean to the mind of the testator only blood relations and not relations by adoption. To hold in her favor would be to hold that she is within the terms of the will a child, and that, in the face of the fact that Thomas Stout never had any children, and in the face of the other fact, which must be conceded by the allegation of adoption, that she was somebody else's child, and therefore not the child of Jacob Stout. Neither is she Jacob Stout's child by implication of the statute. Section 4 of the act of 1877 provides that a child or children (so adopted) shall be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the right of inheritance to real estate or to the distribution of personal estate on the death of such adopting parent or parents as if born to them in lawful wedlock. In other words, such adopted child may inherit from the foster parent, but the adoption shall not operate to create a capacity to take as a child under the will of some other person." Upon this branch of the case this court was affirmed in the court of errors and appeals (*79 N. J. Eq. 640*), for the reasons stated by Vice-Chancellor Howell.

The effect of *Heidecamp* v. *Jersey City, &c., Ry. Co., supra,* is to render the case of *Humphries* v. *Davis (1884), 100 Ind. 274,* and the cases resting upon its reasoning, relied on by the respondent and by the court below, of little authority in this state. In that case the Indiana court, in a particularly hard situation, held that the adoptive parents inherited the property of the adopted child to the exclusion of the natural parents. Even in Indiana, when the question arose as to whether a will was revoked, under a statute similar to that in effect here, by the adoption of a child subsequent to the making of the will, the

court, after considering the case of *Humphries* v. *Davis*, held that the will was not revoked. *Davis* v. *Fogle, 124 Ind. 41; 23 N. E. Rep. 860 (1890)*; *7 L. R. A. 485.*

It is true that the Indiana court, in *Markover* v. *Krauss, 132 Ind. 294; 31 N. E. Rep. 1047 (1892)*, held, two judges dissenting, under a statute providing that if a man marry a second wife and has by her no children, but had children living by a former wife, the fee in his lands should, on his death, vest in such children, subject to a life estate of the widow, that a person adopted by decedent under the provisions of an adopting statute, under which it was provided that the adopted child should receive all the rights and interests in the estate of the adopting father and mother as if he were their natural heir, was in the position of a natural heir and inherited the adopting father's land, subject to the life estate of the second wife. But the majority of the court in its opinion reaffirmed the case of *Davis* v. *Fogle,* holding that the question then before the court was not involved in that decision. The court stated: "The court correctly decided that the adoption of a child was not having a child 'born to' the maker of the will. Only the birth of a child can have the effect of revoking a will."

The force of *Sewall* v. *Roberts, 115 Mass. 262,* also relied upon by the respondent and the court below, is weakened by our determination in *Stout* v. *Cook, supra.* The Massachusetts court held that an adopted child was within the term "child or children," as used in a voluntary settlement made by a testator long prior to the adoption in which he made provision for the special use and benefit of any of his children. The trust was created in 1825. In 1865 he adopted a child. In 1872 he died, leaving no other child. The settlement was irrevocable. The first legislation in Massachusetts with respect to adoption was in 1851. The trust instrument also provided that if the settler should die without leaving any issue, then the principal should go to his mother; that in case he should die without leaving "any lawful issue," and his mother should die before him, then to his heirs-at-law and the heirs-at-law of his mother. The Massachusetts statute provided that an adopted child should be deemed for the purposes of inheritance by such child *and all other legal consequences and*

*incidents of the natural relation of parents and children,* the child of the parents by adoption, the same as if born to them in lawful wedlock, except that he should not be· capable of taking property expressly limited to the heirs of the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation. The court, construing the terms of settlement, held that the term "child or children," "issue and lawful issue" and "heirs," were not confined to heirs of the body, and that the adopted child took under the terms of the settlement as a legal consequence and incident of the natural relation of parent and child. In view of our determination in *Stout* v. *Cook,* it is at least doubtful whether our court would have decided as the Massachusetts court did. *Stout* v. *Cook* may, I suppose, be distinguished upon the ground that although the settler in the Massachusetts case in 1825 could not have had in contemplation an adopted child when he used the terms "child or children," "issue" and "lawful· issue," and although the settlement was irrevocable, yet when he adopted a child in 1865 he perfomed a voluntary act which brought the child of a stranger within the term "child or children" or "issue" used in the settlement. The case of *Sewall* v. *Roberts* is distinguished in the last paragraph of the opinion of the court in *Davis* v. *Fogle.*

In the court below the statute in Massachusetts under consideration in *Sewall* v. *Roberts* was considered similar in import to the statute in effect in this state. An examination of the Massachusetts statute will disclose that it provides that the adopted child should be deemed for the purposes of inheritance \* \* \* *and all other legal consequences and incidents of the natural relation of parent and child,* the child of the parents by adoption the same as if he had been born to them in lawful wedlock, whereas our statute provides that the child should be invested with every legal right, privilege, obligation and relation in respect to education, maintenance and the rights of inheritance to real estate, or to the distribution of personal estate \* \* \* as if born to them in lawful wedlock. The Massachusetts court rested its determination upon the use in the Massachusetts

statute of the term "all other legal consequences and incidents," absent in our statute.

Those cases holding that an adopted child is within the terms "child," "children," "issue" or "lawful issue," as used in statutes of descent and distribution, are not at all applicable. It must be conceded that the legislature, having vested an adopted child with the right of inheritance and of sharing in the distribution of personal property as a natural child, the words "child," "children" or "issue," used in statutes of descent and distribution, must be construed to include an adopted child unless some good reason appears why a distinction should be made between a natural child and an adopted one. Of such cases the following are examples relied upon by the court below and by the respondent: *Batchelder* v. *Walworth, 82 Atl. Rep. 7; Ross* v. *Ross, 129 Mass. 243; In Appeal of Rowan (Supreme Court of Pennsylvania), 19 Atl. Rep. 82; Riley* v. *Day, 88 Kan. 508; 129 Pac. Rep. 524; 44 L. R. A. (N. S.) 296; Atchison* v. *Atchison, 89 Ky. 488; 12 S. W. Rep. 942; 11 Ky. 705; Buckley* v. *Frasier, 153 Mass. 525; 27 N. E. Rep. 708; Warren* v. *Prescott (Maine), 84 Me. 483; 24 Atl. Rep. 948; 17 L. R. A. 435; Virgin* v. *Marwick, 97 Me. 578; 55 Atl. Rep. 520; Shick* v. *Howe (Supreme Court of Iowa), 137 Iowa 249; 114 N. W. Rep. 916; 14 L. R. A. (N. S.) 980; Martin* v. *Aetna Life Insurance Co., 73 Me. 25; Estate of Wardell, 57 Cal. 484; In re Newman's Estate (Supreme Court of California), 16 Pac. Rep. 887.*

In *Morse* v. *Osborne (New Hampshire, 1910), 77 Atl. Rep. 403; 30 L. R. A. (N. S.) 914,* the New Hampshire supreme court held that an adopted child was not issue within the meaning of a statute giving the widow certain rights in her husband's estate in the absence of issue of the marriage, although the statute provided that an adopted child should, for the purpose of inheritance by it and all other legal consequences and incidents of the natural relation of parents and children, be deemed the child of the parents by adoption. It reaffirmed its determination in *Murdock* v. *Murdock, 74 N. H. 77; 65 Atl. Rep. 392,* that the statutory adoption of a child did not invest the husband with the common law right of curtesy. It distinguished *Moran* v. *Stewart, 122 Mo. 295; 26 S. W. Rep. 962,* upon the ground

that under the Missouri statute the right of the widow to take one-half in fee in lieu of dower was made dependent on the husband dying without leaving a child capable of inheritance, and inasmuch as under the adoption statute the adopted child was made capable of inheritance, it was within the statute. *Buckley* v. *Frasier, 153 Mass. 525; 27 N. E. Rep. 768,* was distinguished upon the ground that a Massachusetts statute provided that the word "child" should include adopted child. It agreed with the dissenting opinion in *Markover* v. *Krauss, 132 Ind. 294; 17 L. R. A. 806; 31 N. E. Rep. 1047.* It is not necessary, in my view, to go as far as the New Hampshire court did to determine the case *sub judice* for, as I have above indicated, it seems to me that cases dealing with the construction of statutes of descent and distribution have but little, if any, application to a case resting upon a construction of our statute of wills. The distinction is clearly drawn in the Indiana opinion in *Markover* v. *Krauss, 132 Ind. 294; 31 N. E. Rep. 1047,* and has been recognized in California. While the California court held (*In the Matter of Wardell, 57 Cal. 484*) that, under a statute which provided that, where the testator omits to provide in his will for any of his children, such child should have the same share in his estate as if he had died intestate; an adopted child was within the term "children," yet it also held (*In re Estate of Comassi, 28 L. R. A. 414*) that under a statute providing that a will should be revoked upon marriage and the birth of issue, the adoption of a stranger in blood was not an issue of the marriage and could not be treated as its equivalent.

In *Hockaday* v. *Lynn, 200 Mo. 456; 98 S. W. Rep. 585; 8 L. R. A. (N. S.) 117,* it was held under a statute permitting a person to adopt a child as his heir that an adopted child is not, by right of representation, entitled after the death of his adoptive parent, to take the intestate estate of the latter's brother as his heir. In *Phillips* v. *McConica (Supreme Court of Ohio), 59 Ohio St. 1; 51 N. E. Rep. 445,* it appeared that the Ohio statute provided that the adopted child should be to all intents and purposes the child and legal heir of the person so adopting him or her, entitled to all the rights and privileges and subject to all the obligations of a child of such person, begotten in lawful wedlock.

The court said: "But this is far from providing that such adopted child shall be the issue of the adopter, and of his blood and of the blood of his ancestors," and it reached the conclusion that the adopted child, although enabled to inherit from its adopter, was not enabled through him to inherit from his ancestors. The court further said: "The ancestors of the adopter are presumed to know their relatives by blood, and to have them in mind in the distribution of their estates, either by will or descent, but they cannot be expected to keep informed as to adoption proceedings in the probate courts of the counties of this state; and to allow an adopted child to inherit from the ancestors of the adopter would often put property into the hands of unheard-of adopted children, contrary to the wishes and expectations of such ancestors." This case is in line with the determination in *Stout* v. *Cook, supra.* A case in line with *Stout* v. *Cook* and *Phillips* v. *McConica* is *Jenkins* v. *Jenkins (Supreme Court of New Hampshire), 14 Atl. Rep. 557.* There the testator left a will under which he gave to his son all his estate, and if the said son should die leaving no issue, then to the next surviving brother. The statute in reference to the adoption of children provided that the adopted child should for the purpose of inheritance by such child and all other legal consequences and incidents of the natural relation of parent and child, be deemed the same as if he had been born to them in lawful wedlock, except that he should not be capable of taking property expressly limited to the heirs of the body of the parent or parents by adoption. The court held that, notwithstanding the will did not expressly limit the devise to the heirs of the body, yet it was clear that the intention was that if the son died without leaving lawful heirs of his body the brother should have his estate, and the court said: "That intention could not be defeated by the substitution, after the testator's death, of a different event from the one intended by him, nor by the attempt to supply the want of an heir of the body by any other than the natural, ordinary and lawful means. The testator would not have contemplated the adoption of a child to supply the want of an heir to William. He could not have intended by the word 'issue' a child unlawfully begotten and never made legitimate by marriage with

the mother. He intended an heir in fact and not one created for the purpose by subsequent legislation and judicial proceedings."

When we turn to cases from foreign jurisdictions in which the precise question now before the court had been at issue, we find the following situation: Under statutes similar to our Wills and Adoption acts, Indiana has held that the adoption of a child does not operate to revoke a will. *Davis* v. *Fogle, 7 L. R. A. 485,* approved *Markover* v. *Krauss, 81 N. E. Rep. 1047.* So has the California supreme court (*In re Estate of Comassi, supra*) ; likewise the New York surrogate's court. *In re Gregory's Estate, 37 N. Y. Supp. 925.* Such, undoubtedly, will be the ruling in Ohio. In Iowa it has been held (*Hilpipre* v. *Claude, 46 L. R. A. 171*) that under statutes of that state a subsequent adoption of a child operates to revoke a will. But the Iowa court rested its determination upon the ground that under the local law of the state wills might be revoked other than by the methods prescribed by the statute and that the Adoption act permitted adoption which would confer upon the adopted child all of the rights, privileges and responsibilities which would pertain to the child if born to the person adopting in lawful wedlock without qualification. The Iowa court distinguished *Davis* v. *Fogle, In re Gregory's Estate* and *In re Estate of Comassi.* It seems to me that our statutory provisions are more nearly akin to those which were under consideration in the three latter cases than to those under consideration in the Iowa case. The Iowa court said: "The reasons for the rule that subsequent birth of a legitimate child to the testator before his death operates as a revocation of his prior will apply with equal force to a subsequent adoption under a statute like ours, containing no exceptions or qualifications, and declaring that the rights, duties and relations between parent and child by adoption shall in all respects, including the right of inheritance, be the same that exist by law between parent and child by lawful birth." The supreme court of Illinois, in *Flannigan* v. *Howard, 65 N. E. Rep. 782,* held under a statute providing that if after making a last will and testament a child should be born to any testator, and no provision be made in such will for such child, the will

should not on that account be revoked, but, &c., that an adopted child was within the meaning of the act. At the time the act was passed the Adoption act of Illinois, providing that the adopted child should be deemed for the purpose of inheritance by such child, and his descendants and husband or wife, *and other legal consequences and incidents of the natural relation of parents and children,* the child of the parents by adoption, the same as if he had been born to them in lawful wedlock, except that he should not be capable of taking property expressly limited to the body or bodies of the parents by adoption, nor property from the lineal or collateral kindred of such parents by right of representation, was in effect. The Illinois court held that the effect of adoption was, under such a statute, the same as birth. It relied upon the Iowa case of *Hilpipre* v. *Claude, supra,* and the Massachusetts case of *Sewall* v. *Roberts, 115 Mass. 262.* It is significant that the Adoption act was in effect at the time of the passage of the act with respect to wills, and that the Adoption act conferred upon the parties all legal consequences and incidents of the natural relation of parents and children as did the Massachusetts act considered in *Sewall* v. *Roberts.*

I am unable to agree with the Iowa court that there may not be a legitimate argument made that the same reasoning does not apply in cases of adoption as in cases of birth and issue. *Davis* v. *Fogle, supra; Phillips* v. *McConica, 51 N. E. Rep. 445; Stout* v. *Cook, 77 N. J. Eq. 153.* And, as I have indicated, the court should go slow in interpolating words in the Wills act which must be interpolated in order that the position of the respondent may be sustained, if such an argument can be made.

The underlying reasons which actuate me in reaching the conclusion that I do are: Under the common law of this state wills were not revoked by the birth of subsequent issue (*Van Wickle* v. *Van Wickle, 59 N. J. Eq. 517*) ; revocation is worked solely by virtue of the provisions of the statute (contrary to the rule in Iowa) ; the Adoption act was not in force at the time of the passage of the provisions of the Wills act under discussion; it clearly appears from the context that the words in the Wills act "child," "children" or "issue" had reference to progeny; the provisions of the Adoption act being in derogation of the com-

mon law must be strictly construed; although that act purports to, in certain particulars, create a statute similar to that of the natural relation of parent and child, it does not operate to confer upon such status all of the consequences and incidents, with certain exceptions, as does the statute of Massachusetts, or with no exceptions, as does the statute of Iowa; it does not appear that within the legislative contemplation there may not be a legitimate distinction beween the effect of the birth of issue and the adoption of a child; the court ought, therefore, to go slow in amending by implication the clear language of the provisions of the Wills act; the determinations of the court of errors and appeals in *Heidecamp* v. *Jersey City, &c., Ry. Co., 69 N. J. Law 284,* and *Stout* v. *Cook, 79 N. J. Eq. 640; affirming, 77 N. J. Eq. 153,* seem to indicate that *Humphries* v. *Davis, 100 Ind. 274,* and *Sewall* v. *Roberts, supra,* and those cases resting upon the broad language of the courts there used are not persuasive in this state; the weight of authority in foreign jurisdictions where the statutes under consideration and the situations have been identical with those at bar is in accord with my conclusion.

Some of the cases, notably *Humphries* v. *Davis,* have been hard ones. This case is. The equities are with the proponent of the will. The testator adopted a child, the caveator here, and made such adequate provisions for him as he thought proper. He created a trust. The result of denying probate to the will will be that the testator will be considered as having died intestate and the adopted child will receive a larger interest in the property than contemplated by the testator. The result is unfortunate, but I think relief must be had of the legislature and not of the judiciary. When the legislature used in section 21 of the Wills act the words "child or children born," and referred to "after-born child" and "after-born children," it defined the word "issue," used in the twentieth section, to mean "heirs of the body." To bring an adopted child within its provision, the date of adoption must be considered the date of birth, for, of course, the adopted child may, although adopted after the making of the will, have been born before, and it is preposterous to suppose that if adopted children are within the purview of the statute if they

were born before but adopted after the making of the will, the will remains valid. So, under section 21, if adopted children are within the purview of the statute, the date of birth must be disregarded and the date of adoption substituted.

My conclusion is that an adopted child is not issue within the purview of section 20 of the act concerning wills, and that therefore testator having no issue living at the time of the making of the will, and as he died with his wife *enciente* of a child who was thereafter born, the will is void and the testator must be deemed to have died intestate.

The decree of the orphans court admitting the will to probate will be reversed and the record remanded with direction to enter a decree denying probate.

Settle decree on two days' notice.

### SUPPLEMENTAL OPINION.

Since the filing of the opinion in the above-entitled matter the case of *In re Puterbaugh's Estate,* supreme court of Pennsylvania, has been reported, *104 Atl. Rep. 601.* In that case the court held that under a will providing for a gift over after the death of an individual to his child or children and their heirs, the words "child" or "children" did not include an adopted child where the adoption occurred after the death of the testator, notwithstanding the fact that it was assumed that testator knew of existing legislation that enabled any proper person to adopt a child as his child and heir. This case is in line with our holding in *Stout* v. *Cook, supra,* and is opposed to *Sewall* v. *Roberts, supra.*