ANNA T. YOUNG & others *vs.* BEATRICE A. STEARNS & another.

Suffolk. December 4, 1919. — January 9, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Adoption. Devise and Legacy. Words,* "My lawful heirs."

Under Pub. Sts. c. 148, § 7, now R. L. c. 154, § 7, the children of one, who was adopted by a testatrix after she had made her will and who predeceased the testatrix, are the persons designated to receive the property of the adopting parent, who died in 1897, by a provision in her will giving all of her estate to "my lawful heirs."

PETITION, filed in the Land Court on August 1, 1918, for the registration of the title to land on Hanover Street and Lathrop Place in Boston.

The petition was heard in the Land Court by *Davis,* J. It appeared that the land formerly was owned in undivided halves by two sisters, Elizabeth P. Young and Mary A. Rugg. Mary A. Rugg made a will in 1870, leaving all of her estate to her husband for life, and "after the death of my said husband my said estate

to go to my lawful heirs." On November 27, 1871, she and her husband legally adopted as their daughter a child who afterwards married one John S. Whitaker, had by him two children, the present respondents, and died in 1896, a widow and intestate. Mrs. Rugg died in 1897 and her husband also has died. Elizabeth P. Young survived her sister and in 1910 died testate, leaving the petitioners as her residuary devisees.

The petitioners claimed title under the will of Elizabeth P. Young to her undivided half interest in the land (and this claim was not disputed by the respondents) and to the undivided half interest which was Mary A. Rugg's on the ground that Elizabeth P. Young came under the designation, "my lawful heirs," used by Mary A. Rugg in her will. The respondents contended that, under the provisions of Pub. Sts. c. 148, § 7, they, being the children of an adopted child of Mary A. Rugg, were designated by the words, "my lawful heirs," used in her will and were entitled to the undivided half of the land which was hers at the time of her death. The judge of the Land Court ruled in favor of the respondents and dismissed the petition. The petitioners appealed.

*R. Homans,* (*R. S. McCabe* with him,) for the petitioners.

*S. R. Wrightington,* for the respondents.

BRALEY, J. It appears from the record that Elizabeth P. Young, the mother of the petitioners, who died in 1910, testate, and her sister Mary A. Rugg, owned the tract, for which registration is sought, in undivided halves, and that Mary A. Rugg, who died on March 25, 1897, by her will, dated September 23, 1870, which has been admitted to probate, devised and bequeathed all her estate to her husband for life, and "after the death of my said husband my said estate is to go to my lawful heirs." If nothing further were disclosed, the respondents concede that the petitioners are seised of the remainder. The testatrix and her husband, however, on November 27, 1871, legally adopted as their daughter a child who married John S. Whitaker, and had by him two children, the present respondents. The husband of the testatrix is dead, and, the adopted daughter Alice H. Whitaker also having died in 1896 a widow and intestate, the question is, whether the petitioners are seised of the whole estate or only of an undivided half.

The petitioners contend that the children of Alice are not "heirs" within the meaning of the devise. The date of the death of the

tenant for life does not appear. But this is unimportant. It is immaterial, in view of the contention of the parties, whether the remainder over was vested or contingent. The will speaks only at the death of the testatrix, and Pub. Sts. c. 148, §§ 7–10, now by codification without any material change R. L. c. 154, §§ 7–10, were then in force. By § 7, "As to the succession to property, a person adopted . . . shall take the same share of property which the adopting parent could have devised by will that he would have taken if born to such parent in lawful wedlock, and he shall stand in regard to the legal descendants, but to no other of the kindred of such parent, in the same position as if so born to him. In case the person adopted died intestate, his property, acquired by himself or by gift or inheritance from his adopting parent, or from the kindred of such parent, shall be distributed, according to the provisions of chapters one hundred and twenty-five and one hundred and thirty-five, among the persons who would have been his kindred if he had been born to his adopting parent in lawful wedlock. . . ." This section is a re-enactment of St. 1876, c. 213, §§ 8, 9, the purpose of which "is to provide for cases where property comes to a man's children, not by inheritance, but under a settlement, trust deed, or will, and to establish a rule governing the rights of adopted children in such cases. There is no word which is exactly the equivalent of 'child,' so as to be interchangeable with it under all conditions. We think the intention was to provide, that if, by a settlement, deed, or will, property is given by terms which embrace and include a child born in wedlock, and which, in their application to existing facts, have the same effect and mean the same thing as child or children, such as the terms 'issue,' 'descendant,' or 'heir at law,' the rules provided by this section shall apply in the construction of the instrument. Any other construction would give the statute a very narrow scope, and to a great extent defeat its purposes." Morton, C. J., in *Wyeth* v. *Stone,* 144 Mass. 441.

If we turn to Pub. Sts. c. 125, § 1, now R. L. c. 133, § 1, relating to the descent of real property, we find that land, tenements or hereditaments, or of any right therein shall descend subject to his debts, "First, In equal shares to his children and to the issue of any deceased child by right of representation; . . ." The testatrix was the adopting parent; the respondents are the lawful

children and heirs of the adopted daughter. It is hardly conceivable under the circumstances that the testatrix intended that, if her adopted daughter survived, she should be disinherited, and the property pass to collateral relatives. The devise does not read to my "issue," or "heirs of my body," or "right heirs," but to "my lawful heirs." It is not what the testatrix might have said, but what she did say which governs. The word "heir" or "heirs" will be construed to mean a child or children where such is the plain intention of the testator. *Sewall* v. *Roberts*, 115 Mass. 262, 278. *Walcott* v. *Robinson*, 214 Mass. 172, 174, and cases collected.

We cannot adopt the argument urged in the petitioner's behalf, that if the issue of a deceased illegitimate child could not inherit from the child's mother under St. 1828, c. 139, the issue of a deceased adopted child cannot inherit under Pub. Sts. c. 148, § 7. It was the purpose of the Legislature to put an adopted child on the same footing as a child born in wedlock to the adopting parents, and the words "legal descendants" unless shorn of their ordinary meaning include the legitimate offspring of an adopted child. *Stearns* v. *Allen*, 183 Mass. 404. *Delano* v. *Bruerton*, 148 Mass. 619. *Ross* v. *Ross*, 129 Mass. 243, 267. *Warren* v. *Prescott*, 84 Maine, 483.

We are accordingly of opinion that by the words "my lawful heirs" the testatrix intended at her death to include her child by adoption, and under the statute as we construe it, her children by right of representation take the estate to which their mother if living would have succeeded. *Stearns* v. *Allen*, 183 Mass. 404. *MacMaster* v. *Fobes*, 226 Mass. 396, 399. *Warren* v. *Prescott*, 84 Maine, 453. *Hartwell* v. *Tefft*, 19 R. I. 644. *In re Walworth's Estate*, 85 Vt. 322. The cases of *Wyeth* v. *Stone*, 144 Mass. 441, *Blodgett* v. *Stowell*, 189 Mass. 142, *Brown* v. *Wright*, 194 Mass. 540, *Gammons* v. *Gammons*, 212 Mass. 454, and *Walcott* v. *Robinson*, 214 Mass. 172, where the status of children by adoption was under discussion, are contests between collateral kindred, and are plainly distinguishable from the case at bar in which the testatrix is the adopting parent as well as the owner of the property devised.

The decision of the judge of the Land Court, in which he very fully and clearly points out and follows the principles to which we have adverted, shows no error of law, and the order dismissing the petition should be affirmed.

*So ordered.*