PAUL R. O'CONNELL & another, administrators, *vs.* HENRY POWERS & others.

Worcester. September 24, 1934. — June 24, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, FIELD, & LUMMUS, JJ.

*Adoption. Descent and Distribution. Words,* "Issue," "Heirs," "Descendants," "Kindred," "Relatives."

Under G. L. (Ter. Ed.) c. 210, § 7, where one of two persons unrelated by blood but adopted by the same adopting parent died intestate, unmarried and without issue, leaving as his only kindred the other adopted child and a brother, a niece and nephews by blood, the other adopted child was entitled to property of the decedent acquired by himself or by gift or inheritance from the adopting parent or from the kindred of the adopting parent, to the exclusion of the decedent's kindred by blood.

PETITION, filed in the Probate Court for the county of Worcester on December 23, 1933, described in the opinion.

The petition was heard by *F. H. Chamberlain,* J. Material facts are stated in the opinion. By order of the judge, a decree was entered directing distribution to Jennie L. Wiles, referred to in the opinion as J. Lanette Wiles. Certain respondents, a brother, a niece and nephews by blood of Laura M. Phillips, appealed.

*J. F. Dever,* (*A. C. Walton* with him,) for the respondents Henry Powers and others.

*G. H. Mirick & D. Whitcomb,* for Jennie L. Wiles, submitted a brief.

RUGG, C.J. This is a petition for distribution of the balance of the estate of Laura M. Phillips, deceased, intestate, late of North Brookfield, among her next of kin. The relevant facts are these: On July 8, 1913, Thomas E. Hall of Boston and Jennie E. Hall, his wife, adopted J. Lanette Wiles, whose parents were deceased. On October 19, 1916, the same Thomas E. Hall, then a widower, adopted Laura M. Phillips, whose parents also were deceased. He predeceased said Laura M. Phillips leaving

no issue or children other than these two adopted daughters. On May 11, 1931, said Laura M. Phillips died unmarried, without issue, leaving her sister by adoption. The only question for decision is whether that sister by adoption inherits the estate of Laura M. Phillips, or whether her blood relations inherit it. The governing statute is G. L. (Ter. Ed.) c. 210, § 7. It is in these words: "A person adopted in accordance with this chapter shall take the same share of the property which the adopting parent could dispose of by will as he would have taken if born to such parent in lawful wedlock, and he shall stand in regard to the legal descendants, but to no other of the kindred of such adopting parent, in the same position as if so born to him. If the person adopted dies intestate, his property acquired by himself or by gift or inheritance from his adopting parent or from the kindred of such parent shall be distributed according to chapters one hundred and ninety and one hundred and ninety-six among the persons who would have been his kindred if he had been born to his adopting parent in lawful wedlock; and property received by gift or inheritance from his natural parents or kindred shall be distributed in the same manner as if no act of adoption had taken place. The apportionment and distribution shall be ascertained by the court. A person shall not by adoption lose his right to inherit from his natural parents or kindred."

It is settled that if the deceased had been a legitimate child born according to nature to her adoptive parent, her intestate estate would go to her sister adopted by the same parent. An adopted daughter inherits as a sister from a son of one of the adoptive parents. The statute "gives the adopted child the same right to inherit directly from legal descendants of his adopted parent that he would have if born to the parent in lawful wedlock." *Stearns* v. *Allen*, 183 Mass. 404, 409. A child by adoption has been held to be "issue" of the adoptive parent within the meaning of that word as used in the statute as to descent and distribution. G. L. (Ter. Ed.) c. 190, § 1 (2). *Buckley* v. *Frasier*, 153 Mass. 525. "Issue ordinarily means all lineal descend-

ants." *Hills* v. *Barnard*, 152 Mass. 67, 73. *Gardiner* v.
*Everett*, 240 Mass. 536, 537. G. L. (Ter. Ed.) c. 4, § 7,
Sixteenth. In construing the phrase "my lawful heirs"
in the will of an adopting parent to include children of an
adopted daughter who had predeceased such parent, it was
said with respect to the governing statute: "It was the
purpose of the Legislature to put an adopted child on the
same footing as a child born in wedlock to the adopting
parents, and the words 'legal descendants' unless shorn of
their ordinary meaning include the legitimate offspring of
an adopted child." *Young* v. *Stearns*, 234 Mass. 540, 543.
The child by adoption shares equally and without discrimi-
nation with the child born in wedlock in the descent of
the property of the parents. The intestate property of the
adopted daughter upon her death is distributed among
her kindred by adoption, and such kindred are determined
as if she had been born to the adoptive parents in lawful
wedlock. "She became one of the family by the right of
adoption." *MacMaster* v. *Fobes*, 226 Mass. 396.

It can hardly be thought to have been the intent of the
Legislature that two strangers, both adopted by the same
parents, cannot upon the death of the adoptive parents in-
herit from each other on the decease of one, although in
the same situation each would inherit from the children
of such parents born in wedlock and such children would
inherit from adopted children. It would be a strange
anomaly in the law of domestic relations if two children,
without previous kinship with each other, adopted by the
same parents, should be farther away from each other than
each is from the children born in lawful wedlock to the
adoptive parents. Such distinctions would tend to disrupt
a family. The whole purpose of the law of adoption is to
unify the family. The adopted child stands with respect
to legal descendants of the adopting parents on the same
footing as if born in wedlock to such parents. The adopted
child becomes such legal descendant by operation of law.
*Buckley* v. *Frasier*, 153 Mass. 525. *Young* v. *Stearns*, 234
Mass. 540. It is apparent that the word "descendants"
in this context is not confined in meaning to those alone

who trace their origin to one ancestor, a signification some-times attaching to the word in other connections. *Baker* v. *Baker*, 8 Gray, 101, 120. *Boston Safe Deposit & Trust Co.* v. *Blanchard*, 196 Mass. 35, 38. The word "kindred" at common law and under some statutes means relations by blood. *Brookfield* v. *Allen*, 6 Allen, 585. *Swasey* v. *Jaques*, 144 Mass. 135, 138. Its rigidity of meaning at common law in this respect was hardly greater than that of the word "heirs." *State Street Trust Co.* v. *Sampson*, 228 Mass. 411, 412. Yet the signification of "heirs" has been relaxed so that in appropriate circumstances it comprises relations and connections by affinity as well as by consanguinity. So also has the meaning of "relatives" been expanded. *Dexter* v. *Dexter*, 283 Mass. 327, 331–332, and cases cited. The reasoning of the opinion in *MacMaster* v. *Fobes*, 226 Mass. 396, 399, can hardly be reconciled with a technically strict meaning of "kindred" in the governing statute. To give a narrow meaning to the words "descendants" and "kindred" in this connection, so as to exclude adopted children, not otherwise related, in the same family from inheritance one from the other in the circumstances here disclosed, would be contrary to the general design of the statute and out of harmony with decisions already cited. There is nothing in the history of the statute or in *Wyeth* v. *Stone*, 144 Mass. 441, or *Blodgett* v. *Stowell*, 189 Mass. 142, at variance with this conclusion. Both reason and authority lead to the conclusion that the decree was right.

*Decree affirmed.*