**361**

Catherine M. Harrigan et al.
vs.
William J. Blais et al

M. P. No. 385

359, 360, 361

RESCRIPT
June 16, 1919

SWEENEY, J. Heard on petition, answer and proof.

This is the petition of John J. Harrigan and Catherine M. Harrigan, his wife, and the Home for Destitute Catholic children all of Boston in the Commonwealth of Massachusetts, against William J. Blais and Rose Blais, his wife, of Pawtucket in this state, praying that this Court reverse the decree of the Probate Court of said City of Pawtucket, entered on the 15th day of December, 1915, authorizing said William J. Blais and Rose Blais to adopt Catherine Harrigan, a minor, and to change her name to that of Alice Blais.

The petitioners Harrigan are the parents of said Catherine Harrigan, and they aver that they had no knowledge or information of the filing of the petition of said Blais for the adoption of their child on the 27th day of October, 1915, nor of the action of the Probate Court on the 15th day of December, 1915, authorizing said adoption, until Feburary 15, 1916. December 26, 1916, this petition was filed in this court under authority of Sec. 9 of Chap. 244 of the General Laws, which provides in substance that the parents who have not had personal notice of the pendancy of a petition for the adoption of their child may apply to this Court to reverse a decree within one year after they have actual notice of such fact, and this Court may, in its discretion, reverse the decree if it appears that any of the material allegations in the petition are not true; and the petitioners aver that in the Blais petition to the Probate Court for the adoption of said child, the averments that her parents are unknown and that she had been abandoned by them are not true.

All of the parties interested in the custody and welfare of the child are now before the Court. They have been represented by able and experienced attorneys, who have presented all

**361, 362**

the evidence within their control and full arguement has been made of their respective claims.

The Supreme Court of this state has held that the paramount consideration, and the one which must be decisive of the case, is that which pertains to the best interests of the child.

In re Hope, 19 R. I. 486.

The same rule has been adopted by the Supreme Court of Massachusetts.

Adoption involves a change of status. * * * So far as the infant child is concerned, the state as his protector may make the change for him. The natural parents of the child should be considered and their natural rights should be carefully guarded, but their rights are subject to regulation by the state, and if these come into conflict with the paramount interests of the child, it is in the power of the state by legislation to separate children from their parents when their interests and the welfare of the community requires it.

Stearns vs. Allen, 183 Mass. 404.

In a well written article entitled "Domestic Relations and the Child", by the Honorable Robert Grant, Judge of the Probate Court of Boston, published in a popular magazine (Scribner's) for May 1919, he states the rule to be that "In every instance involving custody, the paramount consideration, which might be termed the pole star of precedent where a child is concerned, is— what is for its welfare and best interests?".

November 27, 1910, the agent of said Home brought said Catherine Harrigan with several other children to the City of Pawtucket for the purpose of placing her and them in suitable houses of charitably disposed persons. Mr. and Mrs. Blais saw the children and after a conversation about Catherine with the agent of the Home in their house, during which he said that her parents were dead and that they could adopt her after two years, if they cared to do so, Mrs. Blais signed the application for Catherine Harrigan and she was then received in their home, where she has remained

ever since, and on the same day the agent made his written report to the Home, stating that the child was in a good home with good surroundings. In January every year following Mrs. Blais made a written report to the Home, stating that the child was with her and

attending school. July 31, 1913, Rev. Alphonse Graton, pastor of the St. Jean Baptiste Church, sent a report to the Home stating that the child attends his church and academy and that she could not be in a better family, and his testimony in court during the hearing upon this petition is to the same effect.

January 1915, the report of Mrs. Blais states that Catherine goes to school every day; talks French and English very well; that they both love her dearly and do not want to part with her for anything. August 31, 1915, Elizabeth H. Nolan, the visiting agent for the Home, found the condition of the child excellent and wrote the remark that "the child has an excellent home." January 6, 1916, Mrs. Blais made a report to the Home, stating that they had just legally adopted Catherine. All of the records are on file at the Home and can be seen by any interested person.

The evidence in this case shows that Catherine Harrigan was born October 16, 1906; that she was taken from the custody of her mother March 10, 1910. when she was 3 years, 5 months old; that she was placed in the custody and home of the respondents November 27, 1910, when she was 4 years and one month old, and after living with them for a few weeks over five years, she was adopted by them December 15, 1915, when she was 9 years and 3 months old. The child has continued to live with her foster parents up to the present time and is now about 13 years and 8 months old.

The petitioners claim that this Court should set aside the decree of the Probate Court authorizing the adoption of said child, because some of the material

allegations in the petition to said Probate Court are not true, namely, that the parents of said child are unknown and that said child had been abandoned by her parents.

The evidence proves that at the time the respondents made application for the child, they inquired as to her parents and were informed that they were dead and, believing this information to be true, they acted upon it and took the child with the understanding that they could adopt her at the end of two years if they cared to do so. When the visiting agent of the Home called upon them in August 1915, she suggested that they adopt the child and the petition for adoption was filed in the following October. The evidence proves that the respondents never received any information as to the existence of the child's parents until after the Probate Court had authorized the adoption of the child. The parents of the child could have ascertained its location any time during the five years

**364**

prior to its adoption by inquiry at the Home and then have visited the child, or at least have written to her, but they neglected to do so. Under the circumstances as shown by the evidence, the respondents were justified in believing that the parents of the child were unknown and, therefore, in concluding that the child had been abandoned by them.

The respondents have no children of their own and they took this little girl into their home for the purpose of adopting her if they grew to love her. The evidence shows that they are people of refinement and means. They are now greatly attached to the child and their love and affection for it is returned by the child, who has never known any other parents and when told by her foster parents, a week before this hearing, that they were not her natural parents, she cried and begged them not to let her be taken from them. The child is now attending a fine parochial

school of her religious faith, where she is receiving a good education, and in the future will have an opportunity to attend High School, and even college, if she is so inclined. She is in a home where she is receiving loving care and correct training; receives piano lessons, and will have opportunities for acquiring other accomplishments and attainments. Under our law, by her adoption she becomes entitled to inherit the estate of her foster parents.

The natural parents of the child have appeared before the Court and have given their testimony as to their disposition and ability to support and maintain the child. It appears from their testimony that Ralph Harrigan was taken from them at the same time that Catherine was taken from them, and that he has been restored to them, and that he is now about 17 years of age and was put to work as soon as the laws of the Commonwealth of Massachusetts would permit this to be done. They also have a daughter about 9 years of age now living with them, and who was born a short time after Catherine was taken from them, upon whom they can lavish their love and affection and support and educate in a proper manner. During the nine years that Catherine has been away from them, they have not seen her nor written to her, although they could have located her if they cared to do so, and during this time they have not spent any money for her maintenance and support. While there has been some improvement in their condition, it has not been sufficient to justify the Court in ordering Catherine into their custody with the burden of her maintenance and support, as they can not possibly provide a home, support and education for her in the manner in which these necessaries have been provided for her during the past nine years. Catherine Harrigan has never known any other home but the home of Mr. and Mrs.

**365**

Blais, and has never received any par-

ental care, to her knowledge, but from them

The Court has given this case the serious consideration which its importance deserves, and in its judgment it is clear that the best interests of Catherine Harrigan and her future welfare and happiness require that she should remain in the custody of Mr. and Mrs. Blais, and, upon the evidence submitted to this Court, they should be allowed to adopt her. The Court having reached this conclusion upon the evidence submitted, it would be an abuse of judicial discretion to reverse the decree of the Probate Court of Pawtucket entered December 15, 1915, authorizing the adoption of said Catherine Harrigan by said William J. Blais and Rose Blais, and said petition is denied and dismissed.

For Petitioners: Fitzgerald & Higgins.

For respondents: James L. Jenks.