[Civil No. 1921. Filed December 10, 1921.]

[202 Pac. 234.]

# EPIGMENIO RIZO, Appellant, v. PASTOR BUR-RUEL and FRANCISCA BURRUEL, His Wife, Appellees.

1. PROCESS—IMMUNITY FROM SUIT DOES NOT EXTEND TO SUIT INVOLV-ING SAME SUBJECT.—The immunity granted to a foreign suitor from service of process while within the jurisdiction for the purpose of attending court does not extend to immunity from process in suit involving the same subject matter, so that a foreigner who had brought *habeas corpus* proceedings to recover the custody of his minor child cannot claim immunity from service in proceedings for the adoption of the child by the persons having her in custody.

2. ADOPTION—COURT HAS JURISDICTION, THOUGH ALL PARTIES ARE FOREIGNERS.—The right to institute proceedings for adoption under Civil Code of 1913, paragraphs 1186–1198, is not limited to citizenship, and the court has jurisdiction over such proceedings, though the child and all other parties thereto are citizens of Mexico.

3. ADOPTION — PETITION HELD TO ALLEGE CHILD WAS RESIDENT.—Though a petition for adoption must show that the child resided within the county under Civil Code of 1913, paragraph 1188, giving jurisdiction over such petition to the court of the county in which the child resides, that allegation need not be expressly made, and a petition alleging that petitioners had been continuously for twenty years residents within the county, and that the child had been left with them in 1914, and they had cared for it ever since, is sufficient.

4. ADOPTION—WELFARE OF CHILD IS HIGHEST CONSIDERATION.—Under Civil Code of 1913, paragraph 1193, authorizing adoption without consent of parents, the welfare of the child is the supreme consideration, though the rights of the parents should not be lightly passed over, so that the court can decree adoption, even though its finding that the parent had abandoned the child was erroneous.

5. TRIAL—HABEAS CORPUS AND ADOPTION PROCEEDINGS INVOLVING SAME CHILD CAN BE HEARD TOGETHER.—Under Civil Code of 1913, paragraph 690, the court was authorized to hear together an application by a father for *habeas corpus* to recover custody of his child and

5.   Different classes of cases susceptible of consolidation, note, **Ann. Cas.** 1913E, 1053.

a petition by those having the child in custody for the legal adoption of the child, since both cases involve the same parties, and the evidence applicable in one would be relevant in the other.

APPEAL from a judgment of the Superior Court of the County of Yuma. Fred L. Ingraham, Judge. Affirmed.

Mr. Glenn Copple, for Appellant.

Mr. D. A. Fraser and Mr. Earl Anderson, for Appellees.

ROSS, C. J.—The controversy is over the custody of one Julia Fidencia Rizo, a female child about eight years old. The rival claimants are the father, Epigmenio Rizo, and Pastor Burruel and Francisca Burruel, in whose care the child has been since 1915. In January, 1921, the father, who is the appellant here, instituted in the superior court of Yuma county *habeas corpus* proceedings to recover the possession of Julia from appellee Pastor Burruel. In his petition he bases his right to the custody of the child on the ground that he is her father, and alleges that he has requested Pastor Burruel, an unfit person to have her care, to let him take the child, but that the request has been refused, and the child is unlawfully detained and restrained of her liberty. Pastor, in his return to the writ, alleges that in 1914 he and his wife, the other appellee, came into the possession of the child, she having been deserted and abandoned by her father, and ever since that date he and his wife have maintained and supported the child, and provided her with the necessities of life. He alleges that the father is unfit to have the care and custody of the child, and asserts his willingness, readiness, and ability competently to care for, educate and support the child, and that it will be to her best interests to be left in their care and control.

On the date set for the hearing of the application for a writ of *habeas corpus* the appellees filed in the same court their petition for leave to adopt Julia Fidencia Rizo, and in said petition alleged that in 1914, Julia Fidencia Rizo was abandoned by her father and delivered into the care and custody of the petitioners, husband and wife, who were then, and for a long time prior thereto had been, actual, continuous, and *bona fide* residents of Yuma county, Arizona; allege that said child at the time she came into their care was the age of three years, and needed care and attention; that the father and all of the relatives of the said child had willfully deserted her, neglected to provide proper care and maintenance for her, and that said desertion and failure to provide had continued since 1914.

The hearing upon the application for the writ and the petition for leave to adopt came on to be heard on February 15, 1921, and upon an order of the court the cases were consolidated and heard together. On the fifteenth day of February the appellant filed his plea in abatement to the petition to adopt, in which he set up that he was a citizen of the Republic of Mexico and that he had appeared before the superior court of Yuma county, Arizona, for the sole and only purpose of determining a writ of *habeas corpus* for the possession of his child, and that, while present in said court, he was served with petition for adoption. He further alleges that the minor child, Julia, and the petitioners are citizens of Mexico, and prays that the petition be dismissed for those reasons. This plea in abatement was the only pleading filed by the appellant. No answer was made to the petition to adopt. The plea in abatement was overruled. A trial was had before the court. An order and decree of adoption as prayed for by appellees was made and entered, and the writ of *habeas corpus* was denied. The father appeals from both judgments.

The first error assigned is the order of the court overruling the appellant's plea in abatement. It is said that the appellant, being a citizen of Mexico, and having come to Yuma county for the sole purpose of prosecuting a writ of *habeas corpus* for the possession of his child, could not be, against his consent, made a party defendant in another action. In a very recent case this immunity from being sued is stated as follows, quoting from the syllabus:

"Suitors, whether plaintiff or defendant, from a foreign jurisdiction are exempt from the service of civil process while attending court and for such reasonable time before and after trial as may enable them to go from and return to their homes." *Sofge* v. *Lowe,* 131 Tenn. 626, L. R. A. 1916A, 734, 176 S. W. 106.

The reason for the adoption of this rule is based upon grounds of public policy, and relates, as the above court has said—

"to a matter of supreme importance—the administration of justice. In order that causes may be fully heard and a just result reached, and that an orderly and unhampered administration of justice may be assured, the law has announced the rule of exemption. If parties to a pending case, or their witnesses, are liable to be thus sued, they may be intimidated and prevented from complying with the foreign court's mandate, if actually summoned or subpoenaed, or from attending voluntarily, as is their privilege. It is against public policy to permit them to be deterred by fear of being subjected to suit while attending, or so going or returning."

While most of the courts have been careful to protect foreign litigants in the matter of their privilege to claim immunity from being sued generally, we think that no case will be found that would limit the adversary party to the particular method of presenting the question involved selected by such foreign litigant. In the present case, for instance, the question involved

is the status of the infant child, Julia, and we cannot
see wherein the privileges or immunities of the father
have been invaded, whether that status is determined
in the application for writ of *habeas corpus* or in the
petition for leave to adopt. Practically the same
question is involved in both cases. In *Livengood* v.
*Ball,* 63 Okl. 93, L. R. A. 1917C, 905, 162 Pac. 768, it
was held that nonresident plaintiffs who voluntarily
brought an action in the courts of Oklahoma against
a citizen thereof were not exempt from service of sum-
mons in an action by the defendants seeking relief
connected with the subject of the litigation commenced
by them. In *Tiedemann* v. *Tiedemann,* 35 Nev. 259,
129 Pac. 313, the court held that immunity from being
sued could not be claimed by a nonresident "when
within the jurisdiction on matters affecting the same
correlated subject matter, and the action is brought in
good faith and calls for the adjudication of substan-
tial rights." The facts in that case were that the
father, a resident of Connecticut, had applied to the
courts of Nevada to obtain the possession of his minor
child from its mother. His petition being denied, the
mother thereupon brought suit for divorce, asking for
the custody of the child and a division of property.

Some of the courts have gone so far as to hold that
the rule of immunity from being sued does not apply
to a nonresident plaintiff who voluntarily goes into a
state and brings suit therein. *Guynn* v. *McDaneld,* 4
Idaho, 606, 95 Am. St. Rep. 158, 43 Pac. 74; *Baldwin*
v. *Emerson,* 16 R. I. 304, 27 Am. St. Rep. 741, 15 Atl.
83; *Mullen* v. *Sanborn,* 79 Md. 364, 47 Am. St. Rep.
421, 25 L. R. A. 721, 29 Atl. 522; *Baisley* v. *Baisley,*
113 Mo. 544, 35 Am. St. Rep. 726, 21 S. W. 29; 21
R. C. L. 1305, §§ 50, 51; 32 Cyc. 492. In view of the
facts in this case, it is not necessary that we deter-
mine at this time which rule of immunity would be en-
forced in this jurisdiction in a proper case.

It is claimed by appellant that, inasmuch as he, his child, and the petitioners to adopt are all citizens of Mexico, the court has no jurisdiction, under chapter 17, title 6, Civil Code of 1913, entitled "Adoption," to decree an adoption; it being contended that the provisions of said chapter do not apply to alien residents in Arizona. We find no such limitation expressed in said chapter, nor are we aware of any good reason why the power of the courts of the state should not extend to the protection, care, and disposition of minor children of foreign birth as well as native born.

It is claimed by appellant that the petition for adoption did not state facts sufficient to authorize the court to hear the same, the particular point made being, as we understand it, that there is no allegation in the petition that the child, Julia, was a resident of Yuma county. The statute (paragraph 1188) provides that the superior court of the county in which the child resides has jurisdiction of a petition to adopt such child. But the statute does not require that the petition shall expressly set forth that the child is a resident of the county where the petition is filed. Of course, it is necessary that that fact be made to appear somewhere in the record, and a petition failing clearly and definitely to set forth the residence would doubtless be subject to demurrer. The appellant did not demur to the petition in this case. Besides, we think the petition did, in effect, set forth that the child was residing in Yuma county at the time of the institution of the proceedings herein. It is alleged that it was left with the appellees in 1914, and that they had cared for it ever since, and that they had resided continuously in Yuma county for twenty years. The evidence clearly shows that the child had been kept by appellees at their home at Palomas, Yuma county, continuously from the time it was left with them until February, 1921, the date of the hearing.

Lastly it is contended by appellant that the evidence shows that the best interests of the child would be subserved by turning its custody over to him. In that connection he insists that the appellees are not qualified or fit to have the custody, care, and education of his child, and that he is. He also contends that there is no evidence supporting the allegation that he had deserted his child. These were questions upon which the court took evidence, and resolved them against appellant's contention. The finding of the court in that regard is as follows:

" . . . About the month of November, 1915, Epigmenio Rizo, the father of said minor child, brought said minor child to Palomas, Yuma county, Arizona, and left her at the residence of Pastor Burruel and Francisca Burruel, the petitioners herein, without consulting them, and without making any arrangement or provision whatever for the keeping, care, maintenance, support, or schooling of said minor child, did there desert and abandon said minor child and return to the Republic of Mexico, and ever since said time and until the filing of the petition herein, and for the period of more than five years prior to the filing thereof, the said father of said minor child has continued to willfully and wholly desert and abandon said minor child to the care and custody and control of the said petitioners, and the said father has wholly and willfully failed and neglected to provide said minor child with the common necessaries of life or with any support whatever."

The court concludes:

"That from all the facts before the court in evidence the judge of this court considers that the interests of said child will be promoted by its adoption by the petitioners."

As to whether the father intended to abandon and desert his child when he left her with the appellees or not, the evidence was in sharp conflict, but we think the findings of the court on that question are fairly

well supported. However, aside from that question, under our law, the interests and welfare of the child are of the highest consideration, and in a proceeding of adoption the court may ignore the natural rights of a parent if in doing so the child's welfare is promoted. Paragraph 1193, Civil Code, states the law:

"An adoption may be decreed without the consent of the parent, guardian, next of kin, or next friend where the judge considers that the interests of the child will be promoted thereby."

Notwithstanding this provision of the statute, we think the natural rights of the parent should not be lightly passed over; but, if the judge, after a careful investigation, comes to the conclusion that it would be better for the child and society for it to be taken from its natural parent and placed in the care of others, the statute gives him that right. As was said in *Stearns* v. *Allen*, 183 Mass. 404; 97 Am. St. Rep. 441, 67 N. E. 349:

"Adoption involves a change of status. So far as the adopting parents are concerned, the change cannot be made without their consent. So far as an infant child is concerned, the state, as his protector, may make the change for him. The natural parents of the child should be considered, and their natural rights should be carefully guarded, but their rights are subject to regulation by the state, and, if these come into conflict with the paramount interests of the child, it is in the power of the state, by legislation, to separate children from their parents when their interests and the welfare of the community require it."

We do not consider that the appellant's objection to the consolidation of the two suits, involving, as they did, the same question, to wit, the status of the minor child, was error. Practically the same question was involved in both cases between the same parties, and evidence applicable to the issue in one case would be relevant and material in the other. We think para-

graph 690 of the Civil Code, providing for consolidation of suits between the same parties, authorized the court to hear the cases together.

The decree of adoption appealed from is affirmed. This necessarily affirms the order of the court denying the writ of *habeas corpus*.

McALISTER and FLANIGAN, JJ., concur.